**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-20834-ALTMAN**

**J K SONS LA, INC.**,

*Plaintiff*,

*v.*

**HAIMOV 41, LLC**, *et al.*,

*Defendants.*
_______________________________/

# ORDER

A Miami-based jeweler allegedly purchased $2.1 million worth of diamonds from a Los Angeles-based wholesaler with no intention of paying in full. The wholesaler brought this action, seeking approximately $1.3 million in outstanding payments. The jeweler has moved to dismiss several counts of the complaint. After careful review, we **GRANT in part** and **DENY in part** the jeweler's motion.

## THE FACTS

J K Sons LA, Inc. ("J K Sons") is a diamond wholesaler based in Los Angeles, California. *See* Complaint [ECF No. 1] ¶ 9. The Defendants, Haimov 41, LLC ("Haimov 41") and Igal Haimov (collectively, the "Haimov Parties"), "own[ ] and operate[ ] a retail jewelry store in downtown Miami"—Haimov Jewelers. *Id.* ¶ 10. "Over the years," the Haimov Parties have "purchased diamonds from the principals of J K Sons." *Id.* ¶ 11. On December 23, 2021, the Haimov Parties and J K Sons communicated "regarding the wholesale purchase of $2.1 million of diamonds." *Ibid.* Following these conversations, the Haimov Parties inspected the diamonds "for their size, cut and clarity" and then "approv[ed]" and "took possession" of the diamonds. *Id.* ¶¶ 11, 13. "In purchasing the diamonds, Haimov represented to J K Sons that he would pay for the diamonds on December 31, 2022." *Id.* ¶

12. "[W]hen time for payment came due," however, "Haimov requested an extension to pay the amount owed." *Id.* ¶ 13. J K Sons agreed to the proposed extension, and "the parties further agreed that the principal balance would then bear interest at the rate of 1% per month until paid in full." *Ibid.* "As interest grew on the amount owed, Haimov offered to provide one or more watches valued at wholesale in the amount of $140,000 to defray the interest owed. Haimov never delivered the watches." *Id.* ¶ 14.

The Haimov Parties made some payments on the balance but eventually "ceased payment altogether." *Id.* ¶ 15. "After further conversations, Haimov proposed to make installment payments" and provided J K Sons with a series of "post-dated, pre-signed checks that could be deposited each month." *Ibid.* On June 26, 2025, J K Sons attempted to deposit a check for $165,000, but it was returned "NSF." *Id.* ¶ 16. As a result of this bounced check, J K Sons "wrote to Haimov 41, informing it that it was in violation of Florida Statute §68.065, and demanding payment within thirty (30) days from the date of such notice. J K Sons also demanded 5% of the face amount of the check, or the total sum of $173,250, as provided under the Florida statute." *Id.* ¶ 17. The Haimov Parties didn't "respond to such communication nor pay the amount demanded." *Id.* ¶ 18. "On October 30, 2025, J K Sons, through counsel, made a further effort to collect on the amount owed. At the time of such correspondence, Haimov 41 owed $1,260,112, which was inclusive of principal, interest, and the undelivered watches. [the Haimov Parties] ignored that communication and demand as well." *Id.* ¶ 19.

In February 2026, J K Sons brought this action. In April 2026, the Haimov Parties filed a Motion to Dismiss (the "Motion") [ECF No. 16].[1] This Order follows.

[1] The Motion is fully briefed and ripe for adjudication. *See* Response in Opposition to Motion [ECF No. 19]; Reply in Support of Motion [ECF No. 20].

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1221 (S.D. Fla. 2023) (Altman, J.) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

## ANALYSIS

J K Sons's Complaint asserts six counts—all arising from the Haimov Parties' failure to pay for the diamonds. *See* Complaint ¶¶ 22–59. The Haimov Parties seek dismissal of Counts I (Breach of Oral Contract), II (Fraudulent Misrepresentation), and VI (Veil Piercing/Alter Ego Liability). *See generally* Motion. We'll address each disputed count in turn.

### I. Breach of Oral Contract

Count I alleges that, as of December 8, 2025, the Haimov Parties were "in breach of the parties' agreement with respect to the purchase of diamonds in the sum of $1,273,553.73, which is inclusive of principal, interest[,] and the undelivered watches." *Id.* ¶ 27. The Haimov Parties claim that Count I should be dismissed for two reasons—neither persuasive.[2]

[2] Both parties agree that Florida law governs this dispute. *See* Motion at 3 ("Florida law governs this Court's consideration of [J K Sons's] claims."); *see also* Response (exclusively applying Florida law).

### A. Statute of Frauds

*First*, the Haimov Parties claim that Florida's statute of frauds provides an affirmative defense to an alleged breach of oral contract for the sale of goods worth more than $500. *See* Motion at 5 ("The Court should dismiss Count I for failure to state a claim because it plainly alleges breach of an oral contract for the sale of goods in excess of $500 in violation of the statute of frauds.").[3]

Under Florida's statute of frauds, "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless . . . signed by the party against whom enforcement is sought[.]" FLA. STAT. § 672.201(1). The statute of frauds, however, doesn't apply to contracts involving goods that have been received and accepted. *See id.* § 672.201(3)(c) ("A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable . . . [w]ith respect to goods for which payment has been made and accepted or which have been received and accepted."). And J K Sons *does* allege that the Haimov Parties "received and accepted" the diamonds in 2021. *See, e.g.*, Complaint ¶ 11 ("Haimov inspected the diamonds for their size, cut and clarity."); *ibid.* ("After approving them, Haimov purchased the diamonds."); *id.* ¶ 13 ("Haimov took possession of the diamonds in 2021."). These allegations, if accepted as true, are sufficient to bring the parties' alleged oral contract within the exception to the statute of frauds. *See* FLA. STAT. § 672.606(1)(a) ("Acceptance of goods occurs when the buyer . . . [a]fter a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that the buyer will take or retain them in spite of their nonconformity.").

### B. Contractual Terms

*Second*, the Haimov Parties argue that "Count I should also be dismissed because it insufficiently alleges which contract and what terms Haimov Jewelers supposedly breached." Motion

[3] "If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)." *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009).

at 8. The Haimov Parties say they aren't clear about which contract J K Sons claims was breached, because the Complaint "swerves between alleging Haimov Jewelers purchased $2.1 million worth of diamonds" and alleging that "Haimov Jewelers agreed to provide 'one or more' watches to pay down an existing debt[.]" *Ibid.* "Such a scattershot pleading," the Haimov Parties declare, "fails to put [them] on notice of the specific cause of action alleged or sufficient detail as to the contract's terms." *Id.* at 9. We disagree.

"A Florida breach of contract claim requires the plaintiff to establish (1) a valid contract, (2) a material breach, (3) causation, and (4) damages." *Perez v. Owl, Inc.*, 110 F.4th 1296, 1305 (11th Cir. 2024). J K Sons's breach-of-contract allegations satisfy this standard: "J K Sons sold Haimov 41 diamonds valued at [ ] $2,100,000," and the Haimov Parties refused to pay their remaining balance of "$1,260,112, which was inclusive of principal, interest, and the undelivered watches." Complaint ¶¶ 11, 19. It's hard to conceive of a more quintessential breach-of-contract claim than one in which a party doesn't pay for the goods it accepted and received. *See Holden v. Freedman's Savings & Trust Co.*, 100 U.S. 72, 74 (1879) ("If payment be not made when the money becomes due, there is a breach of the contract, and the creditor is entitled to damages."). And the Haimov Parties' apparent offer to satisfy a portion of their debt with watches doesn't alter the terms of the underlying contract—nor does it suggest to us that the Haimov Parties aren't "on notice of the specific cause of action alleged." Motion at 9. The Complaint makes clear that J K Sons's breach-of-contract claim is based on the sale of the diamonds, not the subsequent agreement to satisfy a portion of the diamond debt with watches. *See* Complaint ¶ 23 ("On or about December 23, 2021, J K Sons entered into an agreement with Haimov 41 to sell diamonds at wholesale value.").

The Haimov Parties also argue that the Complaint fails to state a breach-of-contract claim because it "alleges the value of the goods supposedly contracted for but does not allege the quantity that [the Haimov Parties] purportedly agreed to buy." Reply at 3. But a plaintiff need only plead

"sufficient specification of the essential terms" to state a plausible breach-of-contract claim. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). And the Complaint does so (at least at this stage of the case) by alleging that the parties entered into an oral contract for a fixed quantity of diamonds worth $2.1 million.[4] In any event, the Haimov Parties raise this argument for the first time in their Reply, *see generally* Motion (silent as to a lack of specified quantity), so it isn't properly before us, *see Herring v. Secretary, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court." (cleaned up)).

**II. Fraudulent Misrepresentation**

Count II asserts a fraudulent-misrepresentation claim based on the Haimov Parties' false representation that they could pay for the diamonds on December 21, 2022, despite their knowledge that they "lacked the financial resources" to do so. Complaint ¶ 32. The Haimov Parties urge us to dismiss this claim because it fails to establish the elements of a fraudulent-misrepresentation claim and "fails to plead fraud allegations with particularity as required" by Federal Rule of Civil Procedure 9(b). Motion at 10. Again, we disagree.

"A fraudulent misrepresentation claim under Florida law has four elements: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *In re Harris*, 3 F.4th 1339, 1349 (11th Cir. 2021) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

[4] We can infer that the quantity of the diamonds is fixed because the Haimov Parties "took possession of the diamonds in 2021." Complaint ¶ 13. And physical possession requires a discrete set of items—one cannot take possession of an indeterminate number of diamonds. It's true, however, that the Complaint only quantifies the number of diamonds by referencing their overall value of $2.1 million—an imprecise measure for a number of reasons (value is subjective, value changes over time, etc.). So, while that allegation is sufficient to survive the Motion, J K Sons will eventually need to be more precise about the number of diamonds it sold.

Count II easily satisfies this standard. According to J K Sons, the Haimov Parties promised to "pay for [the diamonds] on December 31, 2022"—a promise J K Sons says the Haimov parties didn't intend to keep. Complaint ¶ 31. J K Sons also claims that the Haimov Parties knew "the representations were untrue" because the Haimov Parties understood that they "lacked the financial resources to pay for the diamonds." *Id.* ¶ 32. [5] And J K Sons insists that the false statements "were made to induce [J K Sons] to deliver the diamonds to" the Haimov Parties. *Ibid.* Finally, J K Sons was injured in the amount of "$1,273,553.73 as of December 8, 2025." *Id.* ¶ 38.

Because Count II alleges fraud, it must also satisfy the heightened pleading standards of Rule 9(b). "To meet this standard, [a] plaintiff[ ] must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[ ]; and (4) what the defendants gained by the alleged fraud." *Otto Candies*, 137 F.4th at 1178 (cleaned up).

Here, J K Sons has satisfied the strictures of Rule 9(b). It tells us precisely what the Haimov Parties said: "Haimov, acting on behalf of Haimov 41, and as authorized by Haimov 41 as its agent, orally represented to [J K Sons] that it would purchase diamonds and pay for them on December 31, 2022." Complaint ¶ 31. We know Haimov was the speaker, and that the statement was made on or about "December 23, 2021." *Id.* ¶ 30. And how the statement misled J K Sons, as well as what the Haimov Parties stood to gain, is clear from the face of the Complaint. *See id.* ¶ 32 ("[The Haimov Parties] clearly lacked the financial resources to pay for the diamonds, and yet made the promises and took possession of the diamonds. Nevertheless, said statements were made to induce [J K Sons] to

[5] The Haimov Parties claim that J K Sons's general allegations about their mental state are insufficient to state a claim for fraudulent misrepresentation. *See* Motion at 12 ("[T]he Complaint's allegations about [the Haimov Parties'] knowledge and intent is asserted nakedly without supporting detail. . . . Rule 8's demand for facts supporting a claim for relief beyond naked assertions requires far more." (cleaned up)). They're wrong. Even under Rule 9's more stringent requirements, "the conditions of a person's mind, including knowledge, may be alleged generally." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025) (cleaned up).

deliver the diamonds to [the Haimov Parties].”). These specific allegations “alert [the] defendants to the precise misconduct with which they are charged,” thus satisfying the “purpose of Rule 9(b).” *United States ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (cleaned up)).

The Haimov Parties also argue that Count II is “foreclosed by Florida law because it improperly seeks to convert what at its core is a contractual claim into one sounding in fraud.” Motion at 9. This simply isn’t true. J K Sons has identified specific fraudulent conduct *separate from* the Haimov Parties’ ultimate breach of contract—namely, that the Haimov Parties lied about their intention to pay for the diamonds in a concerted effort to induce J K Sons to part with them. These allegations, as discussed above, are sufficient for Count II to survive the motion to dismiss.

### III. Alter-Ego Liability

Count VI alleges a separate “Veil Piercing/Alter Ego Liability” claim. *See* Complaint ¶¶ 54–59. The Haimov Parties argue that “[p]iercing a corporate veil is not itself a cause of action[.]” Motion at 12 (cleaned up). In Response, J K Sons concedes that “alter ego liability is not a stand-alone cause of action” and “requests leave to re-plead its alter ego theory of liability within the substantive Counts I, III, IV, and V.” Response at 9. But it does so without attaching an amended complaint or explaining how its proposed amendments would advance its theory of alter-ego liability. Still, we “should freely give leave [to amend] when justice so requires.” FED. R. CIV. P. 15(a)(2). So, we grant J K Sons leave to amend its Complaint to plead additional facts regarding alter-ego liability.

## CONCLUSION

After careful review, therefore, we **ORDER** and **ADJUDGE** that:

1. The Haimov Parties’ Motion to Dismiss [ECF No. 16] is **GRANTED in part** and **DENIED in part**.
2. Count VI (Veil Piercing/Alter-Ego Liability) is **DISMISSED**.
3. The Haimov Parties’ other arguments for dismissal are **DENIED**.

4. If J K Sons wants to file an amended complaint, it must do so by **September 3, 2026**.

**DONE AND ORDERED** in the Southern District of Florida on August 20, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record